*BUHOL, wife of BOUGUIGNON, vs. BOUDOUS-QUIE & DESTREHAN.*

APPEAL from the court of the first district

PORTER, J. delivered the opinion of the
court. This case has been frequently before
the court. The proceedings which have given
rise to this appeal, have grown out of our
judgment, declaring the plaintiff to be the
proprietor of the premises in dispute, and re-
manding the cause for inquiry into the dam-
age she had sustained by the illegal posses-

When the stat-
ute directs a jury
to be drawn with-
in thirty days af-
ter the passage
of the act, and it
is done after-
wards, the jury is
not legally em-
pannelled.

BUHOL
*vs.*
BOUDOUSQUIE

sion of the defendant: *See vol.* 6, *n  s*. 153 and 697, 7 *ibid* 156.

That inquiry has resulted in a verdict of a jury who assessed her damages at thirteen hundred and twenty dollars. From the judgment confirming this verdict, the party cited in warranty has appealed, after having made an unsuccessful attempt to obtain a new trial in the court of the first instance.

He alleges two errors were committed by the judge *a quo*.

First, in refusing to sustain his challenge to the array of the jury.

Second, in charging the jury incorrectly after the evidence was gone through.

The challenge to the array was founded on an alleged non-compliance by the sheriff with the provisions of an act of the legislature passed the 7th of February 1829, which among other things set forth in the title, is declaredto have for its object, "to reform the mode of designating and summoning jurors of the several courts within the first district."

The third section of the act directs, "that within thirty days of the passing of the act, and annually thereafter, on or before the first Monday of December of each succeeding year, it shall be the duty of the sheriff

. of the parish and city of New-Orleans, to make, or cause to be made, in writing, and keep a register," &c. &c.

The fourth section provides for the judges selecting from this list within thirty days after the passage of the act, and annually thereafter, on the Saturday next after the first Monday of December of each succeeding year, the names of persons to serve as jurors," &c. &c.

And the 13th section declares, that all previous enactments, inconsistent with that act, are repealed.

This act, as already stated, was not published or promulgated, until the 6th of March, 1829 ; and the list of names directed by the sections already quoted, was not made until the 13th and 14th of the same month. The defendant contends that this failure, to comply with the directions of the statute, vitiates the panel.

It has been urged on the court, that the words *thirty days from the passage of the act,* which in French are rendered, *trente jours apres l'adoption de cet acte,* mean thirty days after its promulgation. But whether we take the technical sense, uniformly, and we believe we might say universally given

BUHOL
*vs.*
BOUDOUSQUIE

to these terms, when used in relation to law, or consult the sense of the words as given by philologists, we are led to the directly opposite result. *Pass*, as stated by Johnson, when applied to law, is synonomous with *enact*. The legal meaning of the word in that country from which our language comes, has not been disputed. Our legislature, in numerous instances, have used it in contradistinction to *promulgation*, of which an example may be given from the very title to the act we are now construing ; one of its objects is declared to be the repeal of a law, *passed the* 1*st of April*, 1826, which law, on reference to it, appears to have received the governor's signature on that day. And the common understanding attached to the words *pass an act*, is, we believe, entirely opposed to that contended for by the appellee. There is still however a higher authority on this subject, and that is the constitution of the state. The 20th section of the third article, clearly contemplates the passing of a law, to be distinct from its promulgation ; for it provides, "that every bill which shall have *passed* both houses, shall be presented to the governor ;" if not approved by him, it is to be sent back ; and when reconsidered, if

two thirds of all the members elected to the house in which it originated, " shall agree to *pass* the bill," it shall be sent to the other house ; and if sanctioned by an equal number there, it shall be a law. A perusal of this article, we think, can leave no doubt on the mind, that by the constitution, a bill is *passed* into a law, the moment it receives the sanction of those branches of the government, to whom the power of legislation is granted. We conclude therefore, not only that a law may be passed before it is promulgated, but that it necessarily must be ; and that to adopt the opposite construction, would be to deprive the legislature and mankind (if our opinions could have that effect) of the use of the most clear and apposite terms in the language, to express the idea of enactment, in opposition to publication, or promulgation.

The expressions, therefore, in the statute, *thirty days from the passage of the act,* we think, clearly means, thirty days after its receiving the sanction of the governor. The next question is, whether it is our duty to carry it into effect.

The inconvenience of the construction contended for by the appellant, and the absurd

BUHOL
vs.
BOUDOUSQUIE

consequences that would result from an obe-
dience to the literal term of the law, have
been forcibly presented to us in argument,
and the objection is certainly entitled to
much consideration.    When the terms of
part of a law, taken in their literal sense,
lead to absurd and inconvenient results, or
violate any great principle of natural or so-
cial rights, courts of justice, in all coun-
tries, have been in the habit of seeking for
the intention of the legislature in the scope
and object of the whole enactment; and if
from a view of the whole law, or from other
laws in *pari materia*, the evident intention is
different from the literal import of the terms
employed in a particular part of the law,
that intention is held to controul, because *it* is
really the will of the legislature.    But a slight
consideration will satisfy all, that this power
is to be exercised with great caution.    The
very ground on which courts assume the
right, proves indeed the necessity of doing
so.    Bound, as judges are, to carry into ef-
fect the will of the legislature on all subjects,
where its commands do not violate the pro-
visions of the constitution, they never can re-
frain from, or refuse enforcing a law, unless
where they are clearly and satisfactorily con-

vinced, that the literal terms of the act, con-

vey a different idea from that which was contemplated ; and that in adopting a different construction, they have sought for, and found, the true intention and will of the law-maker.

We have given to this case a great deal of attention : and we have repeatedly asked ourselves : Was it the intention of the legislature, the register should be made thirty days after the passage of the act, or thirty days after its promulgation ? We have been unable to give any other answer, but that it was contemplated by them to be made thirty days after the passage of the law. Such is the literal meaning of the language, expressed by terms which they are in the habit of repeatedly using, and always to express the same idea. Then there is nothing extraordinary in the enactment, nor any thing that could have led to unjust or inconsistent consequences, had it been promulgated in proper time by the officers charged with that duty. By a previous act of the legislature in force when this statute was passed, all laws were to be sent to the public printer in seven days from their passage, and by him was to be printed immediately. Had this been done, as we presume it was contemplated it would

have been done, no inconvenience could have been produced. Knowledge of the regulation would have come to those who were to act under it, in full time to have enabled them to obey it. *Moreau's Digest*, 267.

We have been asked : Can it be believed the legislature contemplated there should be no jury for the first judicial district, for the space of one year? To this question, our answer must be that of every one who looks to the object of the law: certainly not. And had the enactment necessarily produced such an effect, then it would have fallen within the rule already noticed, by which the will of the legislature must be sought in something else than the literal import of a particular clause. But no such consequences followed, or ought to have followed the provision introduced in the statute. It is from a circumstance, arising after its passage, not from the meaning of the terms used, the inconvenience has proceeded. For us, then, to say, that matters arising subsequent to the passage of a law, in relation to its promulgation, will authorise a deviation from the plain and unambiguous commands of the legislature, would be going farther, we believe, than any tribunal has yet gone, and certainly farther than we are prepared to go.

There is still another consideration which
has entered into the judgment we are about to pronounce. The legislature have the pow- er to declare, that laws shall have effect from and after their passage. They have already done so. They may do so again. This mode of legislation is certainly not a convenient one to the citizen, and we presume will not be frequently resorted to. But times may come, and circumstances arise, when the pub- lic interest will imperatively require such a provision. When it does, and a law of this description is passed, every argument urged in this instance against giving effect to the le- gislative will, will apply to any subsequent enactment which is declared to be in force from and after its passage. Clearer terms could not be used in any subsequent law, and there would be few with such a clause that would not produce as much inconvenience, and lead to as absurd consequences as that before us.

It occurred to us, as worthy of considera- tion, whether the time in which the sheriff was to make the register, was not merely directo- ry, and whether it was not good if done in any month in the year. But the legislature,

Eastern District.
*January*, 1830.

by fixing a precise period, must have considered it material, and if the time of making it could be enlarged for months, it might be for years, and thus the whole of the legislation become a dead letter. In conformity with this principle, the case of *Flower* v. *Livingston*, was decided. 12 *Martin*, 681.

On the whole, we conclude that, as the cause was not tried in the court of the first instance, by a jury legally summoned, the case must be remanded.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that the cause be remanded for a new trial, the appellee paying the costs of this appeal.

*Conrad* for appellant, *Hennen* for appellee.

